Edwin A. **BURTNICK**

v.

Jacqueline F. **McLEAN, et al.**

**Civil No. S 94–3440.**

United States District Court,
D. Maryland.

Jan. 29, 1997.

Howard J. Schulman, Joseph S. Kaufman, Schulman & Kaufman, L.L.C., Baltimore, MD, for Plaintiff.

John H. Morris, Jr., Baltimore, MD, for defendant McLean.

James S. Ruckle, Jr., Senior Solicitor, JoAnne Evans Anderson, Assistant Solicitor, Department of Law, Baltimore, MD, for defendant Mayor and City Counsel of Baltimore.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This employment discrimination case has not run an easy course. After the Court granted the defendants' original motion for summary judgment on grounds of legislative immunity, the Fourth Circuit changed the law by its decision in *Berkley v. Common Council of Charleston*, 63 F.3d 295 (4th Cir. 1995) (en banc), *cert. denied*, — U.S. —, 116 S.Ct. 775, 133 L.Ed.2d 727 (1996). Applying the newly-decided *Berkley* case, the Fourth Circuit decided, on plaintiff's appeal from this Court's grant of summary judgment, that defendant McLean [1] was entitled to legislative immunity, but the City was not.

---

1. McLean, formerly the elected Comptroller of Baltimore City, left office in disgrace, having been guilty of felony theft of City funds.

*Burtnick v. McLean,* 76 F.3d 611 (4th Cir. 1996). Furthermore, the Fourth Circuit limited the scope of *Berkley's* overruling effect on prior law, *viz., Baker v. Mayor and City Council of Baltimore,* 894 F.2d 679 (4th Cir. 1990), *cert denied,* 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990), by observing that "*Berkley* only overruled *Baker's* holding that municipalities enjoyed legislative immunity." *Burtnick,* 76 F.3d at 613 n. *. The Fourth Circuit found that no other aspect of *Baker* had been affected by *Berkley. Id.* The Fourth Circuit, finally, remanded for further proceedings as to the City of Baltimore.

There are a number of summary judgment motions pending on either side of this case, which will now be decided. No oral hearing is needed. Local Rule 105.6, D.Md.

In certain ways, oddly enough, the case has become simpler since the appeal was decided. That is, plaintiff now concedes that there is insufficient evidence to raise any claims of discrimination on the basis of age or religion, but he still presses claims of race discrimination (white) and sex discrimination (male). Thus, the complexity of the case has been reduced.

▬ Another development in the law subsequent to the filing of this complaint also simplifies the case. The Fourth Circuit, in 1987, decided the case of *Keller v. Prince George's County,* 827 F.2d 952 (4th Cir.1987), holding that a Section 1983 claim may be based on, *inter alia,* race or sex discrimination in employment by a municipality, and that such Section 1983 cases are not precluded by the existence of Title VII. In *Zombro v. Baltimore City Police Dept.,* 868 F.2d 1364, 1370–71, n. 5 (4th Cir.1989), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989), however, the Fourth Circuit, without any convincing rationale, held *Keller* inapplicable to ADEA cases, even though in virtually every other respect ADEA litigation is indistinguishable from Title VII litigation.

More to the point, the Fourth Circuit seems to have abandoned *Keller* altogether in *Hughes v. Bedsole,* 48 F.3d 1376, 1383 n. 6 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995). Hughes was a public employee who, *inter alia,* brought a claim under 42 U.S.C. § 1983 alleging sex discrimination. In the footnote cited, the Fourth Circuit held, without citation to *Keller,* that the fact that Hughes originally could have instituted a Title VII cause of action precluded an action under Section 1983 for violation of the Fourteenth Amendment, citing, *inter alia, Zombro* and *Great American Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

Thus, this Court is left with conflicting panel decisions of the Fourth Circuit, which can only be resolved by that court *en banc,* as this Court understands that court's internal operating procedures. Given that situation, the Court feels constrained to follow the more recent pronouncement of the Fourth Circuit in *Hughes v. Bedsole.* Thus, the Court will enter summary judgment against the plaintiff on all claims asserted under 42 U.S.C. § 1983.

▬ Plaintiff's claim under 42 U.S.C. § 1981 is not, however, similarly capable of adjudication as a matter of law. Section 1981, unlike Section 1983, is not a general vehicle for the assertion of violation of constitutional rights, *see Hughes v. Bedsole,* but is, as amended, a vehicle for redress of discrimination in employment, private or public. It is available to white persons as well as to non-whites. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). The presence of the Section 1981 claim in this case is of little practical import, though, in that the standards for analyzing discrimination claims brought under Title VII and those brought under Section 1981 are identical. *See, e.g., Blount v. Alabama Co–op. Extension Service,* 869 F.Supp. 1543, 1550 n. 2 (M.D.Ala. 1994).

With these jurisdictional matters out of the way, the Court now turns to the substance of the pending motions.

The first issue that ought to be addressed is the plaintiff's motion for partial summary judgment on the ground that Baltimore City's affirmative action plans are unconstitutional under the criteria developed by the Fourth Circuit in *Maryland Troopers Ass'n,*

*Inc. v. Evans,* 993 F.2d 1072 (4th Cir.1993). This Court does not believe that there is any need to adjudicate the validity *vel non* of the Baltimore City Equal Opportunity and Affirmative Action Plan, because there is no evidence whatever that it was taken into account in any decision that is at issue in this lawsuit. (Further discussion of this issue will be set forth *post.*)

■ This conclusion is based upon an examination of just what employment decision is at issue in this lawsuit. It is clear that what is *not at issue in this lawsuit* is the elimination of Burtnick's old job of Assistant Comptroller. As noted above, the Fourth Circuit let stand so much of the decision in *Baker v. Mayor and City Council of Baltimore, supra,* as did not directly involve the issue of legislative immunity. *Burtnick,* 76 F.3d at 613 n. *. Turning to the Fourth Circuit's decision in *Baker,* the Court notes that the Fourth Circuit specifically held that recommendations for job eliminations from *puisne* officers, *including the comptroller* acting in his or her administrative role, are not "employment decisions" in cases involving—as does this one—budgetary job eliminations in Baltimore City. *Baker,* 894 F.2d at 681. That holding rules this case. The only discriminatory "adverse employment action" in connection with the budgetary elimination of the Assistant Comptroller job pointed to by Burtnick is the action of McLean (and unidentified members of her transition team) in *recommending* elimination of the job to the decision-making Board of Estimates. As *Baker* holds, these recommendations are not within the compass of federal anti-discrimination-in-employment laws. When it comes to the only *actionable* claim under *Baker, viz.,* the actual vote by the Board of Estimates to eliminate the Assistant Comptroller job, Burtnick has produced absolutely no evidence that his race or gender was in any way considered, or played any role whatever, in that decision. Without such evidence—even if the recommendations from McLean and/or her transition team were racially motivated—summary judgment

must be granted for defendant on the job elimination issue, under *Baker, supra. See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ What remains, then, is plaintiff's claim that he was not hired for the scheduled position of Administrative Officer III (which later was translated to the exempt position of Executive Assistant to the Comptroller), on account of his race and/or sex.[2] Plaintiff has certainly presented a *prima facie* case on this issue under the analytical framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). That is, he has unquestionably shown that he was as qualified—in fact, more qualified—to be hired for the job as was the selectee (Ms. Goodman), from the standpoint of education and directly relevant job experience. He has shown that McLean considered, but rejected, him for the job, as will be more fully discussed *post.* He has also shown that the duties he performed as Assistant Comptroller were essentially identical to those performed in the newly-created Administrative Officer III position. He has, finally, demonstrated that the position was filled by someone who was not of his race and not of his gender, *viz.,* Ms. Goodman, a black female.

■ The defendant argues that the plaintiff cannot make out a *prima facie* case, because he did not formally apply for the position. *See* defendant's opposition to plaintiff's motion for partial summary judgment, Exhibit D (Clayton Affidavit). Although, ordinarily, it is true that a formal application needs to be submitted to sustain a claim of disparate treatment by way of failure to hire, the Supreme Court has recognized that this is not an inflexible requirement. *See Teamsters v. United States,* 431 U.S. 324, 367–68, 97 S.Ct. 1843, 1870–71, 52 L.Ed.2d 396 (1977); *see also McDonnell Douglas, supra,* at 802 n. 13, 93 S.Ct. at 1824 n. 13. In this case, there are uncontroverted facts indicating that Ms. Goodman, the person hired for

2. There is no evidence that his failure to be hired as Auditor III was based on race and/or sex discrimination.

the Administrative Officer III position (retitled to Executive Assistant to the Comptroller on August 10, 1992), was "pre-hired." That is, McLean first contacted Ms. Goodman about the position in February, 1992, and Goodman was interviewed for it in April, 1992. She was told in May she would be hired. She was in fact appointed on July 1, 1992, the day Burtnick's old job was abolished and the Administrative Officer III position was established. (Burtnick, on the other hand, was not formally advised that his position was being abolished until McLean's letter to him of May 26, 1992.)

Because it appears that a formal application for the Administrative Officer III position would have been an exercise in futility given the "pre-selection" of Goodman, the fact that plaintiff did not formally apply for the job is beside the point, especially in that he was considered for it.

■ What is to the point, though, is whether there is a triable issue on race and/or sex discrimination in this case, under the Supreme Court's latest views on Title VII law, as expressed in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In that case, the Supreme Court held that a race/sex discrimination plaintiff must carry the ultimate burden of proof on the issue of intentional discrimination by a preponderance of the evidence. If the employer brings forth evidence of a legitimate, non-discriminatory reason for the employment decision, then the employee is required to produce evidence generating a triable dispute on pretext, as well as to satisfy the ultimate burden of proof of intentional discrimination by a preponderance of the evidence. (In so-called "mixed motive" cases, *see* 42 U.S.C. § 2000e-2(m), the plaintiff need only prove that race and/or sex was a factor in the employment decision.)

In this case, the defendant has brought forth precious little evidence of a legitimate business reason for hiring Goodman as Administrative Officer III, a position in which Goodman performed virtually identical duties to those previously performed by Burtnick in

the abolished job of Assistant Comptroller. Although the defendant apparently justifies Burtnick's non-selection in part on the basis of his failure formally to apply for the job, *see* Burtnick deposition at 159-60 (Exhibit C to defendant's opposition memorandum), a thorough reading of that deposition shows he was excluded from making formal application, because he did not get on the City's re-employment list until July 6, while Goodman had in fact assumed office on July 1. Furthermore, there was no opportunity for Burtnick to compete for the job in any practical sense, despite his many years of experience performing essentially the same duties assumed by Goodman, because Ms. Goodman was pre-selected. And, to make matters worse, in early August, the job was reclassified to non-competitive status, under the title "Executive Assistant to the Comptroller," although it entailed essentially the same old duties. Thus, to the extent that plaintiff's failure to apply formally for the Administrative Officer III position is urged as a legitimate business reason for not hiring him, the plaintiff has pointed out sufficient evidence under *St. Mary's Honor Center* to show that the lack of a formal application was not a legitimate business reason for his non-appointment, but was simply a pretext. (In fact, McLean, according to her deposition, actually considered him for the job. McLean deposition at 120.)

■ The Court next moves to the question of whether there is sufficient evidence to warrant trial on the issue of race and/or sex discrimination in the decision to hire Goodman, rather than Burtnick, for the position of Administrative Officer III that was newly-created, largely succeeding to the duties performed by Burtnick.

There is no question that the hiring officer was McLean, and there is no question that the City is responsible for her actions under Title VII and Section 1981, even though she is personally out of the case.[3] Although there is evidence that McLean hired Goodman because she was a personal friend and

---

3. Liability under Title VII and Section 1981 rests on the employer, without the need for the "custom, practice, etc." analysis germane in Section 1983 cases.

worked in her campaign,[4] *see* McLean deposition at 91–92, and because Goodman was "knowledgeable about housing," *id.* at 92–94, there is virtually no evidence as to any *relevant* qualification she had for the job as Administrative Officer III as opposed to others, including Burtnick (who, it is to be remembered, had performed essentially the very functions assigned to the Administrative Officer III job for years, as Assistant Comptroller). As noted *ante,* McLean, despite Burtnick's failure to apply for the job formally, says she did consider putting him into the Administrative Officer III job. *Id.* at 120. Although McLean testified that there were a number of characteristics of Burtnick's that she did not like (including the fact that he carried a gun strapped to his ankle, that he did not get along with the immediate office staff, that she did not like his attitude towards City employees, and that she did not like the facts that he would "disappear" and that he would give himself "comp time"), McLean, on deposition, also said the following:

> His performance, whether or not I felt comfortable, whether or not I trust him, whether or not he would be able to represent me properly in the community. And the community being majority, the City is 68 percent black, that he had to represent me in a City that was predominantly black.

McLean deposition at 120.

From this evidence, and from the fact that McLean's testimony on race-neutral reasons for Goodman's selection might well be subject to impeachment at trial on the basis of her felony theft conviction, *see* Fed.R.Evid. 609, a reasonable jury could conclude, consistent with *St. Mary's Honor Center,* either (1) that race was a factor in the decision to hire Goodman as opposed to Burtnick for the Administrative Officer III position even though other considerations would have resulted in his non-hire anyway,[5] or (2) that he was not hired for the Administrative Officer III position because of outright, intentional discrimination on account of his race and/or sex. In either case, summary judgment cannot be granted for the defendant under Fed. R.Civ.P. 56, as interpreted in *Celotex Corp. v. Catrett, supra,* and *Anderson v. Liberty Lobby, Inc., supra,* consistent with *St. Mary's Honor Center, supra.*

■■ Finally, the Court returns to the question of the City's affirmative action plan. There is insufficient evidence to generate a triable issue as to that plan, because there is no indication at all from the record of this case that McLean's decision to pass Burtnick over for the Administrative Officer III position had anything whatsoever to do with any affirmative action plan in force in the City of Baltimore. Thus, any such plan simply played no role in any employment decision that is at issue in this case, including the budgetary elimination of the Assistant Comptroller job. It is clear from the relevant evidence—the McLean deposition referred to above—that only McLean's personal evaluations and preferences played a role in her decision not to hire Burtnick as Administrative Officer III, and that she followed no formal or informal City policy, custom, ordinance, or usage. Thus, there is no reason to complicate this case by going on to consider the validity *vel non* of the City's affirmative action policies.

For the reasons stated, an order will be entered separately, denying the plaintiff's motion for partial summary judgment, denying in part and granting in part the defendant's motion for summary judgment, and granting summary judgment in favor of the defendant on all claims asserted under 42 U.S.C. § 1983 and all other claims asserted under any jurisdictional statute, except plaintiff's claims of race and gender discrimination in McLean's failure to select him for the position of Assistant Comptroller III.

A pretrial conference will be held on Friday, February 28, 1997 at 9:30 a.m. in lieu of

---

**4.** Cronyism has not yet been outlawed by Congress; racism and sexism have been.

**5.** This would be a violation of 42 U.S.C. § 2000e-2(m), for which there are no damages available (but attorney's fees can be awarded within the Court's discretion). *See Sheppard v. Riverview Nursing Center, Inc.,* 88 F.3d 1332 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996).

the previously scheduled pretrial conference of June 17, 1997.