**Thomas R. SHELTON, Plaintiff,**

v.

**RICHMOND PUBLIC SCHOOLS, Defendant.**

No. CIV.A.3:01CV00166.

United States District Court, E.D. Virginia, Richmond Division.

Feb. 13, 2002.

Nicholas H. Hantzes, Hantzes & Associates, Vienna, VA, for Plaintiff.

Stephanie Ploszay Karn, McGuireWoods LLP, Richmond, VA, for Defendant.

### MEMORANDUM OPINION

DOHNAL, United States Magistrate Judge.

This matter is before the Court by consent of the parties (28 U.S.C. § 636(c)(1)) on the Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. The Plaintiff, an African–American male, alleges that he was deprived of his constitutional right to equal protection of the laws by state action in violation of the

Fourteenth Amendment and 42 U.S.C. § 1983 as the result of the termination of his employment by the defendant school authority on the basis of his race.[1] For the reasons stated herein, the Defendant's motion is GRANTED.

### Standard of Review

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, unsupported conclusory allegations by the non-moving party are not sufficient to create a genuine dispute of material fact so as to withstand the granting of relief. *Celotex Corp. v. Catrett,* 477 U.S. at 327, 106 S.Ct. 2548 (White, J., concurring). In essence, a court must decide if the evidence when viewed in the light most favorable to the non-moving party "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### Undisputed Material Facts and Justifiable Inferences

The Court deems the following to be the undisputed material facts and justifiable inferences on which the resolution of the pending motion is properly based:[2]

1. The Plaintiff submitted an application for employment as a substitute teacher with the defendant public school system in October of 1998. (Def.'s Mem., Ex. 1 ¶ 2 (Aff. of H. Fitrer) (Fitrer Aff.); Ex. D).

2. A provision of the application required the Plaintiff to state whether he "had ever been convicted of a violation of law other than a minor traffic violation" and, if so, to "explain" in space provided. (Fitrer Aff. ¶ 8; Pl.'s Amended Responses to Def.'s First Set of Requests for Admission (Pl.'s Amended Responses) ¶¶ 2, 4; Compl., ¶ 3; Def.'s Mem., Ex. D).

3. The Plaintiff answered the question in the affirmative because he was a convicted felon, but he did not provide any further information by way of explanation or otherwise as required by the application instructions. (*Id.;* Pl.'s Amended Responses ¶¶ 6–8; Compl., ¶ 6; Def.'s Mem., Exs. D, E).

4. The application expressly provided that the Plaintiff's signature thereon authorized the Defendant to conduct a background investigation that could include a criminal records check and that "any omission ... will be sufficient grounds for ... discharge should [he] become employed with the school division." (Def.'s Mem., Ex. D; Fitrer Aff. ¶ 9).

5. The Plaintiff's application was reviewed in the context of a "critical need" to staff the position involved and the individual who conducted

---

1. To the extent that the Plaintiff has also alleged a denial of equal protection on the basis of disparate impact, as opposed to acts of intentional discrimination, such a claim cannot be maintained pursuant to § 1983. *See e.g., Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir.1987).

2. The Court agrees with and therefore adopts in large part the Defendant's identification of undisputed facts that were submitted in compliance with local rule. (Def.'s Mem. in Supp. of Mot. for Summ. J. (Def.'s Mem.) at 1–4; Def.'s Reply Mem. in Supp. of Def.'s Mot. for Summ. J. (Def.'s Reply Mem.) at 1–4).

the initial review on behalf of the Defendant either did not notice that the additional information regarding the Plaintiff's prior criminal record was omitted or she deferred to what she understood would be further review by other sources if there was any problem. (Pl.'s Opp. to Def.'s Mot. for Summ. J. (Pl.'s Opp. Mem.), Harris Dep. at 12, 18–20).

6. The Defendant's employee/agent who reviewed the Plaintiff's application did not ask the Plaintiff if he had been convicted of a felony and did not otherwise know of the circumstance. (Pl.'s Opp. Mem., Harris Dep. at 20).

7. The Plaintiff was hired by the Defendant and commenced working subject to the standard condition that employment was conditioned on the favorable completion of the background investigation, including a criminal records analysis that typically takes several months to complete. (Def.'s Reply Mem., Ex. 10 at 21–23, 25–26 (Curl Dep.); Ex. 11 at 41 (Fitrer Dep.)).

8. State law and the corresponding policy of the defendant school system prohibited the hiring and/or retention of convicted felons. (Va.Code § 22.1–296.1; Fitrer Aff. ¶ 3).

9. The Plaintiff was involved in two incidents involving students in which he was attempting to assist them and which he asserts developed racial overtones resulting in his being considered a trouble-maker who the Defendant wanted to discharge. (Pl.'s Opp. Mem., Pl.'s Dep. at 14–22; Def.'s Reply Mem., Ex. 9 at 69–72 (Pl.'s Dep.)).

10. There is no evidence that the Plaintiff was disciplined in any way as a result of the incidents, that any written report of either incident was every generated, or that any information about the Plaintiff's involvement in the incidents was ever communicated to those directly involved in the Plaintiff's termination. *Id.*

11. The Defendant received notification on March 25, 1999, of the Plaintiff's status as a convicted felon and the Plaintiff was informed on the same date by an authorized representative of the Defendant that his employment "was being terminated because [he] had felony conviction[s]" and that he "didn't explain on our application." (Def.'s Reply Mem., Ex. 9 at 38–39 (Pl.'s Dep.)).

12. The Defendant also forwarded a letter to the Plaintiff of the same date (March 25, 1999) that his employment was being terminated because his "services as a substitute instructional assistant are no longer needed at this time." (Pl.'s Opp. Mem., Ex. 7).

13. The Plaintiff subsequently filed a complaint in a timely fashion with the Equal Employment Opportunities Commission (EEOC) alleging that his employment was illegally terminated on the basis of race and he received "right to sue" authorization to initiate litigation within ninety (90) days by notice from the EEOC, dated January 4, 2000. (Def.'s Mem., Exs. 3–4).

14. Plaintiff retained counsel and settlement discussions with Defendant's counsel ensued, but the Plaintiff was notified by his attorney by letter dated March 16, 2000 (some two weeks before the deadline for filing an action pursuant to "Federal civil rights law") that such efforts were unsuccessful and the matter could not be resolved "with-

out a lawsuit" that counsel did not recommend. (Def.'s Reply Mem., Ex. 9 at 82–83(Pl.'s Dep); Ex. 20).

15. The Plaintiff pursued direct negotiations with the Defendant's counsel thereafter (in addition to ongoing efforts by his attorney), informing the Defendant's representative after receiving the March 16, 2000, letter from his own attorney and before the deadline for filing an action on the basis of his EEOC complaint that he had "decided that no lawsuit will be file [sic] because of my termination." (Def.'s Reply Mem., Ex. 16).

16. Additional efforts were made by the Plaintiff and his attorney to settle his claim(s) that he hoped would include re-employment in some capacity, but the Plaintiff was never told he may be able to get his job back and he was notified on or about May 9, 2000, that the matter could not and would not be resolved by settlement on any terms for the stated reason that the Defendant could not "disregard the circumstances that led to his dismissal." (Def.'s Reply Mem., Ex. 9 at 87, 89–90 (Pl.'s Dep.)).

17. The Defendant has terminated twelve employees for the reason that it was determined they were convicted felons and one employee, a Caucasian female, was retained because of the Defendant's belief that her conviction had been expunged by an act of pardon. (Fitrer Aff. ¶ 14; Def.'s Mem., Ex. F).

18. The Defendant's belief as to the status of the employee was based on receipt of a letter from the Virginia Department of Education to the effect that the individual was duly licensed which the Defendant understood could not happen if the individual had been convicted of a felony and a telephone conversation with an unidentified source in the Department that the individual's rights had been restored by formal process so as to render her eligible for licensure and hiring. (Pl.'s Opp. Mem., Fitrer Dep. at 18–20; Ex. 8).

19. The Plaintiff never filed suit on the basis of an alleged violation of Title VII of the Civil Rights Act as required after exhausting administrative remedies and the present action alleging a violation of the Equal Protection clause and § 1983 was filed on March 21, 2001. (Def.'s Reply Mem., Ex. 9 at 75(Pl.'s Dep.); Compl.).

### Analysis

### Plaintiff's § 1983 Claim is Barred As a Matter of Law

■ There is a continuing debate between circuits and within the Fourth Circuit itself as to whether a party is foreclosed from pursuing a § 1983 claim alleging discrimination if they failed to institute a corresponding Title VII action. Indeed, the Fourth Circuit held in *Keller v. Prince George's Co.*, 827 F.2d 952 (4th Cir.1987), that a plaintiff was *not* foreclosed from pursuing alternate relief pursuant to both statutory schemes and yet later, in *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n. 6 (4th Cir.), *cert. denied*, 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995), the Court held, without reference to *Keller*, that a plaintiff (like the Plaintiff here) who had failed to pursue relief under Title VII after exhausting required administrative procedures could not selectively maintain the same claim under § 1983: "Hughes cannot bring an action under § 1983 for violation of her Fourteenth Amendment rights because Hughes originally could have instituted a Title VII cause of action." Subse-

quent district court decisions within the Fourth Circuit have followed *Hughes*, distinguishing *Keller* on the factual basis that the plaintiff in *Keller* (unlike the plaintiff here) had pursued relief under both statutory schemes without waiving or defaulting as to either avenue and otherwise that "the Fourth Circuit seems to have abandoned *Keller* altogether in *Hughes....*" *Brown v. Housing Authority*, 150 F.Supp.2d 856, 862 (D.Md.2001); *Burtnick v. McLean*, 953 F.Supp. 121, 123 (D.Md.1997). At the same time, authority from other circuits, including from the circuit court level, have adopted the reasoning in *Keller* as the more compelling in concluding that a failure to pursue relief under Title VII does not preclude corresponding efforts pursuant to § 1983. *See e.g., Thigpen v. Bibb County*, 223 F.3d 1231, 1237 (11th Cir. 2000). Nevertheless, until such a time as this circuit renounces or otherwise distinguishes *Hughes* in regard to the issue, this Court is compelled to follow its holding.[3]

### The Doctrine of Equitable Estoppel Does Not Apply

■ The Plaintiff argues that even if *Hughes* applies, he was foreclosed from pursuing relief under Title VII because of affirmative acts by the Defendant that constitute a sufficient basis to apply principals of equitable estoppel or "tolling" to excuse any delay.[4] Specifically, the Plain-

tiff asserts that he relied to his detriment on representations by the Defendant of probable settlement of his claims that caused him to forego filing a Title VII action. (Pl.'s Opp. Mem. at 6–8; Pl.'s Dep. at 23–34). However, the non-conclusory, undisputed facts as identified earlier[5] indicate otherwise. The Plaintiff was surely *not* ignorant of the basis for his claim before the applicable deadline (he retained counsel and actively pursued the matter) and he cannot be seen as having relied on whatever affirmative representations the Defendant's agent made regarding settlement possibilities because his attorney informed him two weeks before the applicable deadline that a lawsuit (that he recommended against) would be required to pursue the matter. (Findings ¶ 14). Moreover, the Plaintiff himself advised the Defendant's representative thereafter (and still before the deadline) that he was not going to file suit and he concedes that he was never told that he could get his job back. (Findings ¶¶ 15–16). At best, any period of time that could be excluded from consideration is still not enough to "save" the action. *See Singletary v. Continental Illinois Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1241 (7th Cir.1993) (equitable estoppel only suspends the running of a statute of limitations during the period that the defendant took affirmative action to prevent the plaintiff from filing suit).[6]

**3.** As the Court felt compelled to do in *Brandon v. City of Richmond*, 2001 U.S. Dist. LEXIS 17908 (E.D.Va. Oct. 25, 2001).

**4.** Equitable tolling may apply if a plaintiff was excusably ignorant of the employer's discriminatory act. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling not generally available for "garden variety" claims of excusable neglect). Equitable estoppel is available where an employer conceals its discriminatory activity or otherwise takes affirmative action to prevent a party from exercising their rights. *See Morse v. The Daily Press,*

*Inc.*, 826 F.2d 1351, 1352–1353 (4th Cir. 1987).

**5.** *See* Undisp. Material Facts and Justifiable Inferences ¶¶ 11–16 (hereinafter Findings).

**6.** The Plaintiff was clearly on notice on or about May 9, 1999, when he received the final letter from the Defendant's counsel (or a copy from his own attorney) firmly rejecting and thereby concluding any further settlement discussions. (Findings ¶ 16). Yet, he never filed a Title VII action and this suit was not filed for another nine-plus months. (Findings ¶ 19). *See Truitt v. County of Wayne*, 148 F.3d

## Plaintiff Cannot Establish
## A *Prima Facie* Case

■ Even though the Court holds that the present action cannot be maintained pursuant to § 1983, it is appropriate to address the merits of the Plaintiff's claim of racial discrimination in case the relevant *Hughes* authority is abandoned or qualified to the benefit of the Plaintiff or it is otherwise determined that the Plaintiff's equal protection allegations can be maintained. The Plaintiff does not assert that there is direct evidence of racial discrimination or that there is even a genuine dispute of material fact as to whether there is such direct evidence. Therefore, the Plaintiff must establish his claim consistent with the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In order to do so, of course, the Plaintiff must establish (among other factors) that he was qualified for the subject position.[7] It is clear that not only the Defendant's own policy and procedures prohibited the hiring and/or retention of convicted felons, but that state law mandated such a policy (Findings ¶ 8). Nevertheless, the Plaintiff argues, without the benefit of authority, that the burden was on the Defendant to determine before hiring whether or not an applicant had a prior felony record or that the Defendant otherwise waived such a qualification in regard to the Plaintiff by not pursuing further investigation when the Plaintiff answered in the affirmative, but without explanation, the general application question of whether he had ever been convicted of anything more serious than a minor traffic offense. Pl.'s Opp. Mem. at 8–12. The Plaintiff also asserts that he should be considered as having been qualified because of the hiring and retention of another employee who is a member of an unprotected class (Caucasian) who they had improperly qualified as not being in the same status even though she apparently revealed in response to the same or similar application question that she had also been convicted of a felony. *Id.*

The Court finds that there is no evidence that the Defendant's agent (Harris) knew of the disqualifying circumstance as pertained to the Plaintiff so as to be in a position to waive the condition[8] and that the hiring and retention of the other employee was based on at least a good faith belief that the employee's criminal record had been officially modified by pardon, the restoration of civil rights, or otherwise so as to justify the decision to consider her as qualified. (Findings ¶¶ 17–19). For the same reasons, the Plaintiff is unable to make a *prima facie* showing that the other employee did not suffer an adverse consequence under the *same* circumstances, but for her race. The circumstances were simply *not* the same as presented to and as reasonably evaluated by the Defendant's agents. The other employee did offer a plausible clarification at the time she was considered for employment and her explanation was sufficiently confirmed

---

644 (6th Cir.1998) (finding that plaintiff waited an unreasonable time after the tolling period was taken into account so as to justify dismissal).

7. The well-known *McDonnell* analysis for establishing a *prima facie* case as applied to this situation requires a showing that: (1) the plaintiff (as here) is a member of a protected class; (2) *that he was qualified for the posi-*tion; (3) that despite being qualified, he suffered an adverse employment action such as termination; and (4) that other similarly-situated employees were not subject to adverse action under the *same* circumstances. *McDonnell,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

8. In fact, the individual testified she did not know of the circumstance. (Finding ¶ 6).

to be relied on as the result of reasonable inquiry.[9] (Findings ¶¶ 17–18).

### The Defendant's Reasons For Termination Were Legitimate And The Plaintiff Cannot Establish That They Are Merely Pretextual [10]

Although the Plaintiff does not contest the fact that termination based on the prohibited status of being a convicted felon is a legitimate, non-discriminatory rationale, it is asserted that the explanation in regard to the Plaintiff's situation was pretextual and that, at the very least, there is a genuine dispute as to its veracity so as to mandate denial of the motion in order for the factfinder (jury) to consider the issue and its impact on the existence of prohibited racial discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Pl.'s Opp. Mem. at 12–19. Specifically, the Plaintiff asserts that the real impetus for his dismissal were classroom incidents that had racial overtones (at least in part) that caused the Defendant to conclude on impermissible racial grounds that the Plaintiff was a "troublemaker" and that the decision maker's multiple explanations of the reasons for the Plaintiff's termination and the timing of relevant events are so inherently and patently ambiguous as to create a genuine dispute of material fact sufficient to preclude summary judgment. (Pl.'s Opp. Mem. at 12–14).

The Plaintiff's assertion is meritless that the lack of recollection by relevant defense witnesses as to the precise timing of when they first became aware of the Plaintiff's status as a convicted felon and their receipt of the conviction report and original fingerprint cards after the Plaintiff's termination creates a genuine dispute as to the real reasons for the termination. Not only is it the clear recollection of the decision-maker (Fitrer) that he was first informed of the fact because it motivated him to thereafter make the decision to terminate the Plaintiff, but also the Plaintiff himself recalls in explicit detail being "called downtown" on the date of his termination (March 25, 1999) and told he "was being terminated because [he] had felony conviction[s]" and that "he didn't explain on our application." (Fitrer Aff. ¶ 12; Pl.'s Opp. Mem., Fitrer Dep. at 36, 41–42; Dunn Dep. at 42; Findings ¶ 11). Obviously, initial information concerning the record check, which is dated as having been prepared on February 26, 1999, was received before the original letter-report and actual fingerprint cards were forwarded some weeks later. (Def.'s Mem., Ex. E)

Furthermore, Plaintiff's speculation that the real reason for his termination was his role as a perceived "trouble-maker" in what he asserts was a racially-tinged incident and a second situation at the school is just that—speculation—and of no moment because there is absolutely no evidence that anything about the incidents or the Plaintiff's alleged role in them (whether his role be viewed favorably or unfavorably) was even reported, let alone commu-

**9.** Furthermore, the fact that the Plaintiff was not given an opportunity before his termination to state whether or not his conviction status had also been modified in any way is of no significance because he had not offered such an explanation on the application when required to do so as had the other employee. His omission of such material information, even if it was available, was grounds for termination and therefore it is hardly reasonable (or logical) for the Defendant to have been compelled to provide such an after-the-fact opportunity to re-visit an issue that had already been determined.

**10.** Although it is not necessary to pursue the *McDonnell* analysis further if it is concluded that the Plaintiff is unable to establish a *prima facie* case for any reason, it is nevertheless appropriate to do so to provide additional grounds for the dispositive relief that the Court is granting.

nicated, to the individual (Fitrer) who made the termination decision.[11] (Findings ¶¶ 9–10; Def.'s Reply Mem., Ex. 13 at 36–39 (Harris Dep.)).

Finally, the Plaintiff urges that the Defendant's explanation for the termination concerning his criminal record and omission of related information on the application is so inconsistent or ambiguous in comparison to the formal letter of termination and related deposition testimony of the decision-maker (Fitrer) (in which the reason cited was that the Plaintiff's services were no longer needed) so as to constitute a genuine issue of disputed material fact. (Pl.'s Opp. Mem. at 12–13; Ex. 7; Fitrer Dep. at 45). Although the issue could have been readily clarified by the decision-maker in his deposition,[12] the versions are not so necessarily-inconsistent or otherwise ambiguous so as to create a genuine dispute. The fact of the matter is that the Plaintiff was ineligible for retention because of his past criminal record and his failure to address it in a timely fashion. Therefore, his services were no longer needed. Of course, even if the versions are deemed to be conflicting or ambiguous, it does not make any difference in the final analysis because the Plaintiff is unable to sustain his burden of establishing a *prima facie* case in the first instance and dismissal is required in any event.

### Attorney's Fees

■ The Defendant requests an award of attorney's fees pursuant to 42 U.S.C. § 1988 as part of its request for dispositive relief on the basis that "the Plaintiff's claims are clearly without merit or foundation" and otherwise "so frivolous" as to mandate the requested relief. (Def.'s Mem. at 10–11; Def.'s Reply Mem. at 15). Under § 1988, known as the Civil Rights Attorney's Fees Award Act, recovery of attorney's fees for prevailing plaintiffs is ordinarily awarded to ensure " 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 428, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting legislative history). At the same time, the standard for recovery of defense fees is stricter, an award under § 1988 being appropriate within the court's discretion "only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40.[13] In determining whether a losing plaintiff's cause was so "meritless" as to justify the award

11. Plaintiff's counsel suggested at oral argument that he "hoped" additional discovery depositions as requested two days before the deadline for conclusion of discovery would reveal that the source of information about the Plaintiff's criminal record was actually another employee (Khanali) who was involved in the incidents. At the same time, counsel properly concedes that there is no evidentiary basis at present to conclude such a scenario existed or that it makes any difference how the decision-maker may have found out about the Plaintiff's felony conviction record other than it being inconsistent with his explanations. Therefore, the prospect must be discounted as mere speculation and otherwise irrelevant.

12. For example, a reasonable explanation for the wording of the letter would be that it was standard language intended to allow for various situations (including future employment of the individual) in order to avoid defamation issues, rather than, for example, language such as "because you have a felony record and did not disclose it when required to do so." The deponent did not offer such clarification, but any difference does not rise to the level of irreconcilable material conflict sufficient to deny dispositive relief.

13. The Fourth Circuit adopted the standard in *J.A. Croson Co. v. City of Richmond*, 779 F.2d 181, 194 (1985), *vacated and remanded on other grounds*, 478 U.S. 1016, 106 S.Ct. 3327, 92 L.Ed.2d 733 (1986), and has not modified or qualified it since.

of defense attorney's fees, case law provides the common-sense cautionary instruction that:

> a district court [must] resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

Although the instant matter was readily resolved on its undisputed material facts as ultimately determined and the applicable law, the Court is not willing to conclude that the effort was so meritless, vexatious, or frivolous to warrant the award of fees. Among other considerations that lead the Court to such a conclusion are the apparent conflict within this federal circuit's own case law as to whether the action could be pursued as it was, as well as the lack of at least specific recollection on the part of several of the Defendant's agents (including the decision-maker) as to at least the timing of relevant events. The lack of consistent clarity in the explanations that were offered for the Plaintiff's termination, and the retention of another employee who is a member of an unprotected class and who appears on initial review to have shared similar circumstances without suffering the same consequence, also provided a basis for at least good faith argument sufficient to preclude the award of fees. The Defendant's request for attorney's fees is therefore denied.

## Conclusion

This case is but another example of the extreme price one can pay later in life for the mistakes made in younger years. It may be that the absolute policy of the state and the Defendant school system against the hiring and retention of anyone who has been convicted of any felony without at least having obtained some political relief from the stigma of conviction is too extreme. However, that is an issue outside the province of the courts as long as such policies are not formulated or implemented in violation of an individual's rights, including those as asserted in this action. This Court can only say in this instance that there is no genuine dispute based on the present record as to whether there was such a violation of federally-protected rights and, therefore, the Defendant's Motion for Summary Judgment must be GRANTED.

An appropriate Order will issue.

## *ORDER*

This matter is before the Court on the Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 that includes a request for attorney's fees pursuant to 42 U.S.C. § 1988. For the reasons stated in the accompanying Memorandum Opinion, the Defendant's Motion for Summary Judgment is GRANTED and the case is DISMISSED. It is further

ORDERED that the Defendant's accompanying request for attorney's fees is DENIED.

Let the Clerk forward a copy of this Order and the accompanying Memorandum Opinion to all counsel of record.

It is so Ordered.