UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ERWIN A. BURTNICK,
              *Plaintiff-Appellee,*

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE CITY,
              *Defendant-Appellant,*

and

JACQUELINE F. MCLEAN,
              *Defendant.*

JOAN M. PRATT, Secretary of the
Board of Estimates,
              *Movant.*

No. 01-2133

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
David A. Faber, District Judge, sitting by designation.
(CA-94-3440-S)

Argued: September 26, 2002

Decided: October 23, 2002

Before MOTZ, TRAXLER, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Michael George Raimondi, OFFICE OF THE CITY
SOLICITOR, Baltimore, Maryland, for Appellant. Howard J. Schul-

man, SCHULMAN & KAUFMAN, L.L.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** William R. Phelan, Jr., OFFICE OF THE CITY SOLICITOR, Baltimore, Maryland, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this Title VII action, a jury found that the Mayor and City Council of Baltimore City discriminated against Erwin A. Burtnick, a former employee in the Office of the Comptroller, and the court awarded Burtnick back pay in the amount of $483,025.33. The City appeals, contending that the back pay award erroneously included a time period in which the "employment position" was exempt under Title VII. We affirm.

I.

This is the second time that this case has been before us. *See Burtnick v. McLean*, 76 F.3d 611 (4th Cir. 1996); *see also Brown v. McLean*, 159 F.3d 898 (4th Cir. 1998) (involving similar termination in the Office of the Comptroller). We set forth only the facts necessary to understand the legal issue presented in this appeal.

On July 1, 1992, Burtnick, a white male, lost his job as Assistant Comptroller when the City abolished that position. At the same time, the City created the position of Administrative Officer III, to which it appointed Mereida Goodman, a female African-American, who held the position from July 1-August 9, 1992. On August 10, 1992, the City abolished the Administrative Officer III position and created the position of Executive Assistant to the Comptroller, which Goodman continued to hold.

In December 1994, Burtnick sued his supervisor, Comptroller Jacqueline McLean, a female African-American, and the City, alleging violations of Title VII, the Age Discrimination in Employment Act of 1967, and 42 U.S.C. §§ 1981 and 1983. The district court granted summary judgment for all defendants based on legislative immunity. Burtnick appealed. In accord with *Berkley v. Common Council of Charleston*, 63 F.3d 295 (4th Cir. 1995) (*en banc*) (which we decided after the district court's grant of summary judgment), we affirmed the grant of summary judgment to McLean based on legislative immunity but reversed and remanded as to the City. On remand, the district court again granted summary judgment to the City on all § 1983 claims, and Burtnick conceded that he had insufficient evidence to raise any claims based on age or religious discrimination. *Burtnick v. McLean*, 953 F. Supp. 121, 123 (D. Md. 1997).

The district court denied summary judgment to the City on Burtnick's "remain[ing]" claim, under Title VII and § 1981, "that he was not hired for the scheduled position of Administrative Officer III (which was later translated to the exempt position of Executive Assistant to the Comptroller), on account of his race and/or sex." *Id.* at 124. On March 30, 2000, the jury returned a verdict for Burtnick on this claim. Pursuant to that verdict, the district court awarded Burtnick back pay under Title VII in the amount of $ 438,025.33.

## II.

The City challenges the back pay award on a single ground. The City conceded below that for the purpose of calculating damages it had illegally discriminated against Burtnick because of his race and sex. Nonetheless, the City claims that the district court erred in holding that "Burtnick could be compensated for the time after the employment position became exempt" from the City civil service system and therefore from the requirements of Title VII. Brief of Appellant at 9. There are two difficulties with this argument.

First, as the trial judge recognized, accepting the City's contention would mean that an employer "after firing its employee in violation of the law, can cut off damages by removing the job from the civil service laws, which the discriminating entity writes and administers. This argument would effectively allow a municipal employer openly

and admittedly to fire a nonexempt employee for a forbidden reason and then, the following day, reclassify the job, which the employee held, making it exempt from the Title VII protection" and thus "insulate" the employer "from nearly all liability." Such an approach, the district court properly concluded, "does not accord with the policy behind Title VII." *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) ("[G]iven a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes" of Title VII.); *Edwards v. Sch. Bd. of Norton, Va.*, 658 F.2d 951, 955 (4th Cir. 1981) ("To require those who have been subjected to unlawful discrimination to prove a continuing entitlement to their jobs in order to receive back pay awards beyond the terms of their current employment would frustrate the purpose of the Act and countenance discrimination without an effective deterrent.").

Moreover, the City has failed to demonstrate the critical underlying predicate of its argument — that "the employment position" ever "became exempt" from the City civil service system and therefore from Title VII.

Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C.A. § 2000e(f) (West 1994). The definition exempts "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." *Id.* That exemption, however, does "not include employees *subject to the civil service laws* of a State government, governmental agency or political subdivision." *Id.* (emphasis added); *see*, *e.g.*, *Brewster v. Barnes*, 788 F.2d 985, 989-90 & n.7, 992 (4th Cir. 1986) (noting dispositive nature of civil service protection under Title VII and Equal Pay Act definitions of employee); *Halloway v. Milwaukee County*, 180 F.3d 820, 828 n.10 (2d Cir. 1999) (finding, under essentially identical Age Discrimination in Employment Act definition, that coverage of commissioner position by civil service laws precluded exemption under statute).

During the relevant time period, the Baltimore City Charter provided that civil service positions "shall be classified with reference to

the examinations hereinafter provided for, as Exempt, Competitive, Non-Competitive and Labor Class" and that all of "[t]he offices and positions so classified by the Commission shall constitute the Classified Civil Service[.]" Charter of Baltimore City, Art. VII, § 110 (1964 Revision, with amends. to Jan. 1, 1993). It further provided that "[t]he Exempt Class of the Classified Civil Service shall include all offices or positions, except those of laborers, for the filling of which competitive or non-competitive examinations shall be decided by the Commission to be impracticable." *Id.* § 111. Civil Service Rule 6A also provided that "[t]he Exempt Class shall contain those positions for which the Commission has determined that examinations are impracticable." In sum, under the Charter and applicable rule, the civil service laws covered the "Exempt Class" positions, even those positions exempt from examinations.

Moreover, the City Charter provided that the position at issue in this case, in all three of its permutations, was included within the civil service. At the time of his termination on July 1, 1992, Burtnick held the Assistant Comptroller position. The City had placed that position in the "Exempt Class" of its civil service system in April 1992, but the City never exempted the position from its civil service laws. On July 1, 1992, the City abolished the Assistant Comptroller position and created the successor Administrative Officer III position, which Goodman held from July 1-August 9, 1992. The City concedes that the Administrative Officer III position was not exempt from the City civil service laws. On August 10, 1992, the City abolished the Administrative Officer III position and reclassified it as Executive Assistant to the Comptroller. The City placed this new position in the "Civil Service Exempt Class," but again the City never exempted the position from its civil service laws. Accordingly, the position at issue here — in all of its permutations — was subject to the City civil service laws and thus to the requirements of Title VII.

Finally, we note, notwithstanding the City's suggestion, that the district court never found to the contrary. As set forth above, the district court, in granting partial summary judgment did state: "What remains, then, is plaintiff's claim that he was not hired for the scheduled position of Administrative Officer III (which was later translated to the exempt position of Executive Assistant to the Comptroller), on

account of his race and/or sex." *Burtnick*, 953 F. Supp. at 124.* In this passage the court did not find that the Executive Assistant position was exempt from the City civil service laws or Title VII, but only that it was an "exempt position" *under* the City civil service laws. Other references in the opinion to the position change clarify this point. *See*, *e.g.*, *id.* at 125 (noting, in a discussion regarding evidence of a legitimate non-discriminatory reason for the employment decision, that the Administrative Officer III position "was reclassified to non-competitive status, under the title 'Executive Assistant to the Comptroller,' although it entailed essentially the same old duties").

## III.

For all of these reasons, the judgment of the district court is

*AFFIRMED*.

---

*One district judge presided over the substantial pre-trial matters. Because of a scheduling conflict, another judge presided over the trial and made the damages award. In making the back pay award, the trial judge may have misunderstood the quoted statement.