**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 23, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-41403

---

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

RICARDO PEREZ-MACIAS

Defendant - Appellant

---

Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi

---

ON PETITION FOR REHEARING

(Opinion April 2, 2003, 5th Cir. 2003, _____F.3d_____)

Before KING, Chief Judge, and DAVIS, Circuit Judge, and

ROSENTHAL, District Judge.[*]

KING, Chief Judge:


The petition for rehearing is DENIED.  This court's opinion,

327 F.3d 384 (5th Cir. 2003), is hereby withdrawn, and the

following opinion is substituted:


Ricardo Perez-Macias appeals his conviction and sentence,

arguing that under the Supreme Court's recent decision in <u>Alabama</u>

---

[*]     District Judge of the Southern District of Texas,
sitting by designation.

v. Shelton, 535 U.S. 654 (2002), his prior uncounseled misdemeanor conviction for illegal entry under 8 U.S.C. § 1325(a), for which he received a probated sentence, violated his Sixth Amendment right to counsel and therefore cannot form the predicate for the instant felony conviction for illegal entry under § 1325(a).  We affirm.

## I.   FACTUAL AND PROCEDURAL HISTORY

### A.   The First Offense

On May 7, 2002, Defendant-Appellant Ricardo Perez-Macias[1] illegally entered the United States; he was arrested the next day.  On May 9, he was charged in federal district court in Laredo with a misdemeanor offense of illegal entry in violation of 8 U.S.C. § 1325(a) (2000).[2]  Perez-Macias is a Mexican citizen with no legal status in the United States who has entered the

---

[1]     The defendant explained in the sentencing hearing for his first offense that his last name is actually Perez-Marcias, not Perez-Macias.  However, because both parties and all of the court documents refer to the defendant as Perez-Macias, we will as well.

[2]     The statute provides:

Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall, for the first commission of any such offense, be fined under title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under title 18 or imprisoned not more than 2 years, or both.

8 U.S.C. § 1325(a) (2000).

United States illegally approximately fifteen times.[3]  He

appeared pro se, entered a plea of guilty, and was sentenced to a

three-year term of unsupervised probation and a $10 special

assessment.  The Immigration and Naturalization Service then

allowed Perez-Macias to voluntarily return to Mexico.

**B.    The Second Offense**

Less than two weeks later, on May 20, 2002, Perez-Macias

crossed the Rio Grande River and again illegally entered the

United States.  He was arrested by border patrol agents in Three

Rivers, Texas, on May 21, 2002.

On June 13, 2002, Perez-Macias was indicted in federal

district court in Corpus Christi on one felony count of illegal

entry in violation of 8 U.S.C. § 1325(a)(1) (2000)[4] and two

counts of transporting illegal aliens in violation of 8 U.S.C.

§§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii) (2000).  Because of

this second offense, the magistrate judge who sentenced Perez-

Macias in the first case began proceedings to revoke Perez-

Macias's probation.  The district court in this case sought and

---

[3]    Though Perez-Macias entered the United States illegally
many times, he was only prosecuted twice, for the May 7, 2002
offense and for the May 20, 2002 offense.

[4]    The indictment charged:

On or about May 20, 2002, in the Southern District of
Texas and within the jurisdiction of the Court, the
defendant, RICARDO PEREZ-MACIAS, an alien, having been
convicted previously on May 9, 2002, for illegally
entering the United States in violation of Title 8,
United States Code, Section 1325, did knowingly enter
the United States at a place other than as designated
by the immigration officers.

received transfer of the probation revocation proceedings to it in order to consolidate the revocation and the sentencing on the second offense.

As part of a plea agreement, Perez-Macias agreed to plead guilty to the illegal entry count in exchange for the United States's agreement to recommend the maximum credit for acceptance of responsibility and to dismiss the other two counts. The district court accepted Perez-Macias's guilty plea and considered the appropriate sentence. The district court sentenced Perez-Macias for the charged felony illegal entry offense, rather than a misdemeanor offense, because he had previously been convicted of illegal entry. The Presentence Report ("PSR") recommended Perez-Macias be sentenced with an offense level of 6.[5] This reflected a base offense level of 8 for a repeat violation of 8 U.S.C. § 1325(a) with two levels subtracted for acceptance of responsibility. See U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 (2001). The PSR also added three points for criminal history: one for Perez-Macias's prior illegal entry conviction and two because he was on probation for that offense when he committed the instant offense. See id. § 4A1.1. These three criminal history points put Perez-Macias in a criminal history category of II.

Perez-Macias objected to the use of his prior uncounseled misdemeanor to enhance his sentence, arguing that under Alabama v. Shelton, 535 U.S. 654 (2002), the misdemeanor conviction was

---

[5]     The district court used the 2001 version of the United States Sentencing Guidelines.

4

obtained in violation of his Sixth Amendment right to counsel. Specifically, Perez-Macias objected to the use of his prior conviction to both: (1) enhance his offense from misdemeanor illegal entry (for which the maximum sentence is six months) to felony illegal entry (for which the maximum sentence is two years) under 8 U.S.C. § 1325(a) and (2) add three criminal history points to place him in a criminal history category of II under the Sentencing Guidelines.

The district court agreed with Perez-Macias, finding that Shelton bars the use of his prior uncounseled misdemeanor because Perez-Macias received probation in that case.[6] Therefore, the district court relieved Perez-Macias of the probation sentence in the first case and left only the $10 special assessment.[7] The

---

[6] The district court considered, and rejected, the United States's argument that Perez-Macias knowingly and intelligently waived his right to counsel in the prior proceeding. The United States has not appealed this holding.

[7] The district court explained:

Here's what we're going to do: We're going to give you both something to appeal. . . . [W]ith respect to the Laredo cause number that's been transferred up to me, 02-1759M, that probationary period of two [sic] years, he is relieved of that probation and he no longer stands subject to that probation. However, the conviction remains as well as does his requirement to pay $10. . . .
With respect to Cause Number 02-168 out of this court, the Court does not find that he was under a sentence of probation. The Court, I guess, would presume – and I think it's fair to presume – that that would have to be valid probation. And having determined in a contemporaneous proceeding that it is an invalid probation, the Court will not award those two points.

district court then determined that, having vacated the sentence of probation from the misdemeanor conviction, that conviction could permissibly be used to enhance the instant offense from a misdemeanor to a felony. Alternatively, the district court held that 8 U.S.C. § 1325(a)'s felony enhancement provision, which states that a prior "commission" of an illegal entry offense may be used to enhance a subsequent offense, does not require a "conviction," so that even if Perez-Macias's previous conviction was invalid under Shelton, his first offense may still be used to enhance his second offense. After holding that the previous conviction could be used to enhance the offense under § 1325(a), the district court decided to use the prior conviction, but not the prior (and now vacated) sentence of probation, to determine Perez-Macias's criminal history category. The district court thus gave Perez-Macias one criminal history point (rather than three), but then departed upward to a criminal history category of III (under U.S. SENTENCING GUIDELINES MANUAL § 4A1.3) because Perez-Macias had previously and repeatedly illegally entered the United States. The district court sentenced Perez-Macias to eight months in prison, one year of supervised release, and a $100 special assessment. The district court then entered an order dismissing the probation revocation proceedings because it had "delet[ed] the term of probation."[8]

---

[8] Neither Perez-Macias nor the United States has appealed this order or questioned the power of the district court to modify the sentence in the first case without holding a probation revocation hearing.

6

Perez-Macias appealed.  He now argues that: (1) under

Alabama v. Shelton, his prior uncounseled misdemeanor conviction

cannot be used to enhance his offense from a misdemeanor to a

felony and (2) the district court erred in its alternative

holding that 8 U.S.C. § 1325(a) requires only "commission" of an

offense and not a "conviction."[9]

## II.  STANDARD OF REVIEW

Constitutional questions are reviewed by this court de novo.

E.g., United States v. Aguilar-Tamayo, 300 F.3d 562, 564 (5th

Cir. 2002).  Issues of statutory interpretation are also reviewed

de novo.  E.g., United States v. Hanafy, 302 F.3d 485, 487 (5th

Cir. 2002).

## III.  DISCUSSION

### A.  Whether Perez-Macias's prior uncounseled misdemeanor conviction can be used to enhance his current illegal entry offense from a misdemeanor to a felony

Perez-Macias argues that his prior uncounseled misdemeanor

cannot be used to enhance the offense in this case from a

misdemeanor to a felony.  Specifically, he reads the Supreme

Court's recent ruling in Alabama v. Shelton, holding that there

is a Sixth Amendment right to counsel in misdemeanor cases where

a suspended sentence is imposed, to require counsel (or a valid

waiver of counsel) in misdemeanor cases where only probation is

imposed.  Assuming that his prior conviction was

---

[9]      Perez-Macias does not argue on appeal that his prior conviction was unconstitutionally used to calculate his criminal history category or that the district court erred in departing upward in determining his criminal history category.

7

unconstitutional, then, Perez-Macias argues it cannot be used to enhance his current offense from a misdemeanor to a felony even though the district court vacated the sentence of probation.

The United States argues that Perez-Macias's prior misdemeanor may be used to enhance his current offense because Shelton applies to require counsel only when suspended sentences, and not when stand-alone sentences of probation, are imposed. The United States argues that a defendant sentenced to probation does not have a Sixth Amendment right to counsel so long as he never receives a sentence of imprisonment. The United States further argues that even if Shelton applies to require counsel before a defendant may be sentenced to imprisonment upon revocation of his probation, because the district court in this case vacated the sentence of probation for the first offense, Perez-Macias could never be sentenced to prison for that offense. Hence, his previous conviction may be used to enhance his sentence for the current offense.

The district court determined that Shelton gave Perez-Macias a Sixth Amendment right to counsel in his first case because he was sentenced to probation. The district court then vacated Perez-Macias's sentence of probation in the first case and held that the first conviction could permissibly be used to enhance the current offense from a misdemeanor to a felony under 8 U.S.C. § 1325(a).

The Supreme Court has explained that a defendant has a Sixth Amendment right to counsel in a misdemeanor case only under

8

certain circumstances.[10] In Argersinger v. Hamlin, the Supreme Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. 25, 37 (1972) (emphasis added). In Scott v. Illinois, the Court clarified that the right to counsel only applies where the defendant is actually sentenced to imprisonment and not merely where imprisonment is an authorized penalty.[11] See 440 U.S. 367, 370-74 (1979). In Nichols v. United States, the Court went one step further, explaining that an uncounseled misdemeanor conviction that was valid under Scott because no term of imprisonment was imposed may be used to enhance the penalty for a subsequent offense. See 511 U.S. 738, 748-49 (1994).

In Alabama v. Shelton, the Court considered whether a defendant sentenced to a suspended sentence of imprisonment has a Sixth Amendment right to counsel. See 535 U.S. 654, 122 S. Ct. 1764, 1767 (2002). Shelton was convicted of third-degree assault in Alabama state court and was sentenced to a suspended 30-day prison sentence, two years' unsupervised probation, and monetary

---

[10] In contrast to a misdemeanor case, a defendant charged with a felony always has a Sixth Amendment right to counsel. See Gideon v. Wainwright, 372 U.S. 335, 339-45 (1963).

[11] Perez-Macias suggests that we hold that there is a right to counsel in any case where imprisonment is an authorized punishment. Because the Supreme Court has previously rejected that argument, see Scott, 440 U.S. at 370-74, we reject the argument as well.

penalties.  See id. at 1767-68.  The Court held that a suspended

sentence is a "term of imprisonment" requiring counsel under

Argersinger and its progeny.  See id. at 1767.  The Court

explained that "[a] suspended sentence is a prison term imposed

for the offense of conviction.  Once the prison term is

triggered, the defendant is incarcerated not for the probation

violation, but for the underlying offense."  Id. at 1770.

Shelton did not address the sentence of probation at issue

in this case because a suspended sentence is not the same as a

stand-alone sentence of probation.  The sentence under

consideration in Shelton was a suspended sentence coupled with

probation, while in this case, Perez-Macias received probation

without a suspended sentence.[12]  Many, if not all, states impose

probation only in connection with a suspended sentence.  See

Shelton, 122 S. Ct. at 1776 (noting "the Alabama Attorney

General's acknowledgment at oral argument that he did not know of

any State that imposes, postconviction . . . a term of probation

unattached to a suspended sentence").  In contrast, in the

federal system, probation is available as a stand-alone sentence

and suspended sentences are not used.  See U.S. SENTENCING

GUIDELINES MANUAL ch. 7, introductory cmt. (2001) ("The statutory

authority to 'suspend' the imposition or execution of a sentence

---

[12]    Perez-Macias was also sentenced to a $10 special
assessment, but this fine is not relevant to the Sixth Amendment
analysis because Scott made it clear that imposition of a fine
does not trigger the right to counsel.  See Scott, 440 U.S. at
368-74.

10

in order to impose a term of probation was abolished upon implementation of the sentencing guidelines.  Instead, the Sentencing Reform Act recognized probation as a sentence in itself."); see also 18 U.S.C. § 3561 (authorizing a sentence of probation).  None of our sister circuits has yet addressed how Shelton applies to federal stand-alone probation sentences.

A suspended sentence is conceptually different from a sentence of probation.  If a defendant receives a suspended sentence, he is sentenced to a term of imprisonment that is suspended.  See Shelton, 122 S. Ct. at 1770.  Suspended sentences are usually imposed in conjunction with probation so that if a defendant commits another crime or violates a condition of probation, his suspended sentence is activated.  See id.  If a defendant receives only a sentence of probation, he is sentenced to community release with conditions; he does not receive a sentence of imprisonment.[13]  See, e.g., Wayne R. LaFave et al., Criminal Procedure 1199-1200 (3d ed. 2000); see also Johnson v. United States, 529 U.S. 694, 711 n.11 (2000) (noting that federal probation is an "alternative" to imprisonment).  If a defendant serving a stand-alone probation sentence violates a condition of probation, his probation may be revoked after a hearing and he may be sentenced to any punishment that was originally available at sentencing.  See 18 U.S.C. § 3565 (2000); FED. R. CRIM. P.

---

[13]    Probation should be distinguished from supervised release: probation is imposed instead of imprisonment, while supervised release is imposed after imprisonment.  See U.S. SENTENCING GUIDELINES MANUAL ch. 7, introductory cmt. (2001).

11

32.1; see also Gagnon v. Scarpelli, 411 U.S. 778, 782, 787-90 (1973) (holding that a defendant has a due-process right to a hearing before his probation is revoked). At a probation revocation hearing, federal law grants the defendant a right to counsel, a right to written notice of the violation, disclosure of evidence against him, the opportunity to hear and present evidence, and the opportunity to question adverse witnesses. See 18 U.S.C. § 3006A(a)(1)(C) (2000); FED. R. CRIM. P. 32.1. The district court does not retry issues of guilt or innocence; the only issue is whether the defendant violated a condition of probation and what should be done about it. See United States v. Francischine, 512 F.2d 827, 829 (5th Cir. 1975). The issue of whether there was a violation need not be determined beyond a reasonable doubt and the Federal Rules of Evidence generally need not be followed. See id.; see also FED. R. EVID. 1101(d)(3).

The Shelton Court expressly refused to address whether its holding applies to a sentence of probation uncoupled with a suspended sentence. Initially, the Court limited its holding to suspended sentences: "We hold that a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged." Shelton, 122 S. Ct. at 1767 (quoting Argersinger, 407 U.S. at 40) (emphasis added). The Court then noted that though Alabama "invite[d] [them] to regard two years' probation for Shelton as a separate and independent sentence" and hold that "probation uncoupled from

12

a prison sentence should trigger no immediate right to appointed counsel," the Court would not consider that argument because "[t]here is not so much as a hint . . . in the decision of the Supreme Court of Alabama[] that Shelton's probation term is separable from the prison term to which it was tethered." Shelton, 122 S. Ct. at 1775-76.  The Court thus stated: "Absent any prior presentation of the position the State now takes, we resist passing on it in the first instance."  Id. at 1776 (citation omitted).  Shelton, by its very language, does not address the right to counsel in misdemeanor cases where a defendant receives a stand-alone probation sentence.

Further, we do not believe that the logic of Shelton compels extension of the right to counsel to cases where the defendant receives a sentence of probation uncoupled with a suspended sentence.  The key to the Supreme Court's jurisprudence addressing the right to counsel in misdemeanor cases is whether the defendant receives a sentence of imprisonment.  See Nichols, 511 U.S. at 749 ("[A]n uncounseled misdemeanor conviction, valid under Scott because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction.") (emphasis added); Scott, 440 U.S. at 374 ("[N]o indigent criminal defendant [may] be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense."); Argersinger, 407 U.S. at 37 ("[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense . . . unless he was represented by counsel at his

13

trial.") (emphasis added). The Court has made it clear "that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment" and that "actual imprisonment [i]s the line defining the constitutional right to appointment of counsel." Scott, 440 U.S. at 373. The Shelton Court reaffirmed the "actual imprisonment" standard. See 122 S. Ct. at 1769-70. Applying that standard to this case, we find the answer clear. A defendant who receives a suspended sentence is given a term of imprisonment, while a defendant who receives a stand-alone sentence of probation is not. Perez-Macias was sentenced to probation, not to prison, and thus his previous uncounseled misdemeanor conviction may be used to enhance his current offense.[14]

At the same time, we are cognizant of the fact that a misdemeanor defendant sentenced to probation could receive a prison term upon revocation of his probation. The threat of imprisonment if and when the probation is later revoked does not dictate that the defendant be afforded counsel when he is found guilty of the underlying misdemeanor offense and receives probation. The actual imposition of a term of imprisonment upon probation revocation may pose a Sixth Amendment problem.[15] That

---

[14]    We thus disagree with the district court's holding that Shelton bars imposition of a sentence of probation on an uncounseled misdemeanor defendant who did not validly waive his right to counsel. Put simply, the district court erred in equating suspended sentences with probation.

[15]    In its brief to this court, the United States conceded that an uncounseled defendant sentenced to stand-alone probation

14

is, it may be the case that a misdemeanor defendant who was convicted without counsel may not be sentenced to prison upon revocation of his probation. We need not address that issue, however. Here, the district court relieved Perez-Macias of the probation sentence for his first offense, leaving only a fine. See Scott, 440 U.S. at 370-74 (holding there is no Sixth Amendment right to counsel when only a fine is imposed). The district court then dismissed the pending probation revocation proceedings for that offense; neither party appeals that ruling. Thus, Perez-Macias did not and cannot receive a term of imprisonment for his first offense. As a result, there is no Sixth Amendment problem with Perez-Macias's first conviction and it may be used to enhance the instant offense. See Nichols, 511 U.S. at 748-49.

**B.** **Whether the district court erred in alternatively holding that only commission of a prior offense, but not a conviction, is required to enhance a misdemeanor**

---

who violates a condition of probation may not be sentenced to imprisonment at his probation revocation hearing. It stated that "if Perez had not validly waived counsel at the time of his original misdemeanor plea, then under Scott and Argersinger the sentencing court would not be permitted to impose a sentence to imprisonment upon revocation of Perez's probation."

Upon inquiry from this court, the Office of the Solicitor General confirmed that this is also the position of the Department of Justice generally. Though the Solicitor General may have previously taken a contrary position in a case that did not directly present the issue, his position is now clear. As the Solicitor General explained in a supplemental letter brief to this court, "[A] stand-alone sentence of probation is not a sentence of imprisonment and does not trigger the Sixth Amendment right to counsel," though "if an indigent misdemeanor defendant neither had counsel nor validly waived the right to appointed counsel, the defendant cannot be sentenced to imprisonment upon revocation of his probation."

15

**illegal entry offense to a felony under 8 U.S.C. § 1325(a)**

Because we affirm Perez-Macias's conviction and sentence on the grounds that Perez-Macias's prior conviction was validly used to enhance his current offense, we do not consider the district court's alternative holding that 8 U.S.C. § 1325(a) requires only evidence of commission of an offense, and not a prior conviction, to enhance a misdemeanor illegal entry offense to a felony.

## IV.  CONCLUSION

For the foregoing reasons, Perez-Macias's conviction and sentence are AFFIRMED.

16